# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E. & J. GALLO WINERY, | Case No.  1:13-cv-00770-AWI-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE PARTIALLY GRANTED AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE DENIED |
| v. | |
| GRENADE BEVERAGE LLC, | |
| Defendant. | ECF NO. 56, 65 |
| | OBJECTIONS DUE WITHIN FOURTEEN (14) DAYS |

On June 25, 2014, Plaintiff E. & J. Gallo Winery ("Plaintiff") and Defendant Grenade Beverage LLC ("Defendant") filed cross motions for summary judgment.  (ECF Nos. 56, 65.) The motions were referred to the undersigned magistrate judge for Findings and Recommendations pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.

The hearing on the motions for summary judgment took place on August 13, 2014. Steven Weinberg and Michael Salvatore appeared on behalf of Plaintiff and Steven Yuen appears on behalf of Defendant.  For the reasons set forth below, the Court finds that Plaintiff is entitled to summary judgment and recommends that Plaintiff's motion be partially granted and Defendant's motion be denied.

/ / /

/ / /

1

**I.**

**BACKGROUND**

Plaintiff filed this action on May 22, 2013.  (ECF No. 1.)  Plaintiff asserts trademark infringement and other related claims against Defendant arising from Defendant's marketing of an energy drink called "El Gallo" and the potential marketing of an energy drink called "El Gallito."  Plaintiff claims Defendant's "El Gallo" products violate Plaintiff's "Gallo" trademark for wines.

The following facts were jointly submitted by both Plaintiff and Defendant as undisputed in their Joint Stipulation of Undisputed Facts in Support of Plaintiff E. & J. Gallo Winery's Motion for Summary Judgment, filed on June 25, 2014.  (ECF No. 57.)

Plaintiff is a California corporation with its principal place of business in Modesto, California.  (Joint Stipulation of Undisputed Facts in Supp. of Pl. E. & J. Gallo Winery's Mot. for Summ. J. ("JUF") No. 1.)  Defendant is a California limited liability company with its principal place of business in Orange, California.  (JUF No. 2.)  The "GALLO" mark as used for wine products has been displayed in different formats over the years.  (JUF No. 3.)

Plaintiff has sold wine under the "GALLO WIGNATURE SERIES" trademark since October 2011.  (JUF No. 4.)  GALLO wines can be found in many different areas of liquor stores and other off-premise retail stores.  (JUF No. 5.)  GALLO wines are currently sold in over 93,000 off-premise and 22,000 on-premise retailers located throughout the United States.  (JUF No. 6.)  Over 1.5 billion bottles of GALLO wines have been sold in the United States since 1996. (JUF No. 7.)  GALLO wines currently are sold through over 235 wholesale distributors in the United States.  (JUF No. 9.)  Wines currently sold under a GALLO trademark include GALLO FAMILY VINEYARDS, GALLO FAMILY VINEYARDS ESTATE, GALLO FAMILY VINEYARDS SINGLE VINEYARD, GALLO FAMILY VINEYARDS SONOMA RESERVE, GALLO SIGNATURE SERIES, and GALLO vermouth.  (JUF No. 10.)

Rooster Design logos have been displayed on all bottles of GALLO FAMILY VINEYARDS, GALLO FAMILY VINEYARDS ESTATE, GALLO FAMILY VINEYARDS SINGLE VINEYARD, GALLO FAMILY VINEYARDS SONOMA RESERVE, and GALLO

SIGNATURE SERIES wines and GALLO vermouth sold in the United States since 2005.  (JUF No. 11.)   Over the years, Plaintiff has made extensive use of television, radio and print advertising in advertising and promoting GALLO wines.  (JUF No. 12.)  Over the last few years, Plaintiff has advertised GALLO FAMILY VINEYARDS wine on many popular websites reaching a wide spectrum of consumers, including the websites of the Huffington Post, Woman's Day, Hollywood, Recipe.com, Good House Keeping, IMDB, Food and Wine, Life and Style, ABC, BravoTV, Oprah, All Recipes, Parade, Better Homes and Gardens, Bazaar, the Weather Channel, Match.com, Taste of Home, US Magazine, Yahoo, and the Rachel Ray Show.  (JUF No. 14.)

GALLO wines can be purchased online at numerous online alcoholic beverage retail websites.  (JUF No. 15.)  Many third party articles have been published over the years about the Gallo family, the Gallo Winery and Gallo products, including GALLO wines.  (JUF No. 16.) Since the mid-1990s, Plaintiff has engaged in numerous co-promotional campaigns with partners such as the NFL and Heineken, in connection with marketing Plaintiff's GALLO wines.  (JUF No. 17.)  Plaintiff has produced and continues to produce a wide variety of point of sale displays and other materials for GALLO wines, which are and have for many years been displayed in both off-premise and on-premise retail locations.  (JUF No. 18.)  The "For All Your Families" campaign generated over 119 million impressions for the GALLO FAMILY VINEYARDS brand.  (JUF No. 20.)  Plaintiff's GALLO FAMILY VINEYARDS has been the sponsor of a campaign started in 2009 and still running called "Every Cork Counts" in which Plaintiff donates a certain amount of money to Meals on Wheels for every GALLO FAMILY VINEYARDS wine cork or photo of a GALLO FAMILY VINEYARDS wine cork submitted to Plaintiff by consumers.  (JUF No. 21.)

In addition to the facts listed in the jointly submitted statement of facts, the following facts are undisputed, as Defendant concedes they are undisputed in its response to Plaintiff's separate statement of facts.

Plaintiff is the owner of U.S. trademark Registration No. 3091520 of a Rooster Design, which trademark has been in use since November 2005, which registration is valid and

1  subsisting, and Plaintiff's exclusive rights in Reg. No. 3091520 are incontestable.  (Def. Grenade

2  Beverage LLC.'s Resp. to Pl. E. & J. Gallo Winery's Sep. Stmt. in Supp. of Mot. for Summ. J.

3  ("Def.'s Resp.") No. 19.)  Plaintiff is the owner of U.S. trademark Registration No. 2159050 of a

4  Rooster Design, which registration is valid and subsisting, and Plaintiff's exclusive rights in Reg.

5  No. 2159050 are incontestable.  (Def.'s Resp. No. 20.)

6      GALLO wines, and virtually all of Plaintiff's wine products can be purchased online

7  through Plaintiff's Barrel Room website www.thebarrelroom.com.    (Def.'s Resp. No. 45.)

8  Plaintiff's point of sale displays and other materials for GALLO wines for many years have been

9  displayed in many different areas of off-premise locations.  (Def.'s Resp. No. 58.)  Plaintiff and

10  its distributors and/or retail customers have conducted wine tastings for GALLO wines in both

11  off-premise and on-premise locations, which have been open to and attended by consumers.

12  (Def.'s Resp. No. 59.)  Plaintiff spent over $6.4 million in 2012 and over $6 million in 2013 for

13  advertising and promoting GALLO FAMILY VINEYARDS wine products.  (Def.'s Resp. No.

14  89.)

15      Defendant's first sale of its EL GALLO product was made to The Car Spa car wash in

16  Irvine, CA, on or around October 20, 2011.  (Def.'s Resp. No. 96.)  Defendant has sold its EL

17  GALLO product in Irvine, CA, Santa Ana, CA, Anaheim, CA, Los Angeles, CA, Corona, CA,

18  Los Alamitos, CA, Fresno, CA, Austin, TX, Norwalk, CA, Las Vegas, NV, Lake Forest, CA,

19  Mission Viejo, CA, Orange, CA, Phoenix, AZ, Bakersfield, CA, Laguna Beach, CA, Tustin, CA,

20  Turlock, CA, La Habra, CA, Irwindale, CA, Porterville, CA, City of Commerce, CA, El Monte,

21  CA, Manor, TX, Larkspur, CO, Centennial, CO, Aurora, CO, and Menlo Park, CA.  (Def.'s

22  Resp. No. 97.)

23      Defendant's EL GALLO product was sold at retail pricing that was determined by

24  charging slightly more than ROCK STAR energy drink, and slightly less than MONSTER

25  energy drink. (Def.'s Resp. No. 105.)  At least one bar displayed the EL GALLO product next to

26  alcoholic beverages. (Def.'s Resp. No. 106.)  The EL GALLO product was promoted as a mixer

27  for alcoholic beverages on a Colorado news program.  (Def.'s Resp. No. 107.)  Defendant was

28  familiar with GALLO wines before the inception of Grenade Beverage LLC or the creation of

1   the EL GALLO product.  (Def.'s Resp. No. 108.)  Defendant's distribution and advertising of its

2   EL GALLO product were limited.  (Def.'s Resp. No. 119.)

3       The following facts are undisputed, as Plaintiff concedes they are undisputed in its

4   response to Defendant's separate statement of facts.

5       Plaintiff has never applied to register the EL GALLO mark with the United States Patent

6   and Trademark Office.  (Pl. E. & J. Gallo Winery's Resp. to Def. Grenade Beverage LLC's

7   Separate Statement in Supp. of Mot. for Summ. J. ("Pl.'s Resp.") No. 2.)  Plaintiff has never

8   applied to register the EL GALLITO mark with the USPTO.  (Pl.'s Resp. No. 4.)

9       Plaintiff has abandoned its claims for damages as well as for any other monetary relief in

10  this action, except for costs and attorneys' fees should it prevail.  (Pl.'s Resp. No. 9.)

11      Plaintiff has never sold any nonalcoholic beverages except for water and does not intend

12  to sell any nonalcoholic beverages except for water.  (Pl.'s Resp. Nos. 23-25.)  Plaintiff has no

13  plans to sell energy drinks.  (Pl.'s Resp. No. 26.)

14                                    **II.**

15              **LEGAL STANDARDS FOR MOTIONS FOR SUMMARY JUDGMENT**

16      Under Federal Rule of Civil Procedure 56, "[a] party may move for summary judgment ...

17  if the movant shows that there is no genuine dispute as to any material fact and the movant is

18  entitled to judgment as a matter of law."  Summary judgment must be entered "against a party

19  who fails to make a showing sufficient to establish the existence of an element essential to that

20  party's case..."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[A] party seeking summary

21  judgment always bears the initial responsibility of informing the district court of the basis for its

22  motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories,

23  and admissions on file, together with the affidavits, if any,' which it believes demonstrate the

24  absence of a genuine issue of material fact."  Id.

25  / / /

26  / / /

27  / / /

28  / / /

# III.

# DISCUSSION

**A.      Plaintiff's Trademark Claims**

Plaintiff argues that it is entitled to summary judgment because there is no genuine dispute as to any material fact with respect to its trademark claim.   Trademark claims are governed by 15 U.S.C. § 1125, which prohibits the use in commerce of any word, term, name, symbol, or device, or any combination thereof, which is likely to cause confusion or to cause mistake or to deceive as to the affiliation, connection, or association of such person with another person or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.   To state a trademark claim, a plaintiff must meet three basic elements: (1) distinctiveness, (2) nonfunctionality, and (3) likelihood of confusion.   <u>Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery</u>, 150 F.3d 1042, 1047 (9th Cir. 1998).

1.      <u>Distinctiveness</u>

"To be valid and protectable, a mark must be 'distinctive.'  Distinctiveness measures 'the primary significant of the mark to the purchasing public.'"  <u>Zobmondo Entertainment, LLC v. Falls Media, LLC</u>, 602 F.3d 1008, 1113 (9th Cir. 2010) (quoting <u>Quiksilver, Inc. v. Kymsta Corp.</u>, 466 F.3d 749, 760 (9th Cir. 2006)).  Federal registration of a trademark "provides 'prima facie evidence' of the mark's validity and entitles the plaintiff to a 'strong presumption' that he mark is a protectable mark.  <u>Id.</u>

Plaintiff has introduced evidence that the GALLO mark is federally registered and that Plaintiff owns that GALLO mark.  (See Pl. E. & J. Gallo Winery's Statement of Undisputed Facts in Supp. of its Mot. for Summ. J. Nos. 6-8.)  Defendant contends that these facts are disputed because the El Gallo Girl Corporation registered and owns a federal trademark for "El Gallo Giro."  (See Def.'s Resp. Nos. 6-8.)  Defendant also contends that the fact that Plaintiff owns the federally registered GALLO trademark is irrelevant.  The Court rejects Defendant's objection on relevance grounds.  The ownership of the GALLO trademarks is clearly relevant.

Defendant's objection based upon the ownership of the El Gallo Giro trademark does not create a genuine dispute with respect to whether Plaintiff registered and owned the GALLO

trademark.  The fact that the El Gallo Giro trademark exists does not create a factual dispute regarding whether Plaintiff owned and registered the separate GALLO trademark.

Since Plaintiff has established that the GALLO mark has been properly registered, the burden shifts to Defendant to show that the mark is not protectable.  Zobmondo Entertainment, LLC, 602 F.3d at 1114.  Defendant's opposition does not raise any arguments challenging Plaintiff's prima facie showing that the GALLO mark is distinctive because it was properly registered.  Accordingly, the Court finds that Plaintiff has met the first element of a trademark infringement claim.

### 2. Nonfunctionality

"A product feature is functional and cannot serve as a trademark if the product feature is essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant, non-reputation-related disadvantage."  Kendall-Jackson Winery, Ltd., 150 F.3d at 1048 (internal quotations and citations omitted).

There is no dispute that the GALLO mark is nonfunctional, as the term "GALLO" does not describe a feature of Plaintiff's products.  Accordingly, the Court finds that Plaintiff has met the second element of a trademark infringement claim.

### 3. Likelihood of Confusion

"The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products."  Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1053 (9th Cir. 1999) (internal quotations and citations omitted).  "We look to the following factors for guidance in determining the likelihood of confusion: similarity of the conflicting designations; relatedness or proximity of the two companies' products or services; strength of [the plaintiff's] mark; marketing channels used; degree of care likely to be exercised by purchasers in selecting goods; [the defendant's] intent in selecting its mark; evidence of actual confusion; and likelihood of expansion in product lines."  Id. at 1053-54.  These eight factors are commonly referred to as the "Sleekcraft factors."  See AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir.

1979).

> [T]his eight-factor test for likelihood of confusion is pliant. Some factors are much more important than others, and the relative importance of each individual factor will be case-specific. Although some factors—such as the similarity of the marks and whether the two companies are direct competitors—will always be important, it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors.

Id. at 1054.

### a.   Similarity of the Conflicting Designations

When comparing marks, courts compare the marks in terms of appearance, sound and meaning. Brookfield Communications, Inc., 174 F.3d at 1054. "In analyzing this factor, the marks must be considered in their entirety and as they appear in the marketplace, with similarities weighed more heavily than differences." Id. (internal quotations and citations omitted).

Curiously, Plaintiff's motion for summary judgment fails to include any evidence which shows what Defendant's "El Gallo" product looks like or any evidence which shows how Defendant identified or distinguished its "El Gallo" product. The Ninth Circuit has directed trial courts to consider marks "as they appear in the marketplace" for similarity. GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1206 (9th Cir. 2000). Plaintiff has introduced no evidence of how Defendant's marks "appear in the marketplace."

Even without analyzing the appearance of the EL GALLO mark, the Court concludes that the two marks are similar. Recently, the Ninth Circuit held that the "La Quinta" and "Quinta Real" marks are similar because the two marks have an identical dominant word: "Quinta": "This conclusion is supported by the fact that the dominant words frequently appear without anything more in the marketplace." La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V., No. 12-15985, 2014 WL 3844135, at *5 (9th Cir. Aug. 6, 2014).

Further, there is also some evidence that consumers pronounce Plaintiff's mark in the same manner as Defendant's mark: Plaintiff introduces anecdotal evidence of witnesses overhearing the GALLO mark pronounced as both "GUY-YO" and as "GAL-LOW." (See Decl.

of Ryan Martin in Supp. of Pl.'s Mot. for Summ. J. ¶ 12.  Plaintiff also argues that, since the words are spelled the same, one could infer that many customers would pronounce the marks in the same way.

Neither party has submitted much in the way of admissible evidence regarding the meaning of the Plaintiff's use of GALLO and the meaning of Defendant's use of EL GALLO. Without citing to any admissible evidence, Defendant argues that Plaintiff's use of GALLO refers to the surname of Ernest Gallo and Julio Gallo, who are the older brothers of owner Joseph Gallo, whereas Defendant's use of EL GALLO refers to the Spanish word for rooster.  Plaintiff does not deny whether GALLO refers to Ernest and Julio Gallo, but argues that Plaintiff has marketed its GALLO products using rooster logos, suggesting that the GALLO mark has a double meaning.  Since neither party has introduced admissible evidence regarding the meaning of GALLO and EL GALLO, the Court will not consider these arguments in ruling on the cross motions for summary judgment.

Finally, the Court rejects Defendant's argument that the doctrine of foreign equivalents somehow applies to eliminate any similarities between GALLO and EL GALLO.  The doctrine of foreign equivalents states that foreign words from common languages are translated into English to compare the two marks.  Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772, 396 F.3d 1369, 1377 (Fed. Cir. 2005).  However, Defendant fails to cite any authority for the novel proposition that the doctrine of foreign equivalents can be applied in such a way that EL GALLO is translated to "the rooster" but GALLO is not translated for the similarity analysis.  Defendant offers no facts or rationale argument as to why EL GALLO would be translated by the average consumer from Spanish to English, but GALLO would not. Furthermore, the Court is unaware of any case where the doctrine of foreign equivalents was used to find dissimilarity between two marks that were nearly identical before translation. Rather, in Palm Bay Imports, Inc. and the cases cited therein, the doctrine of foreign equivalents was only applied to find similarity between two marks that were not identical before translation, but were similar after translation of one of the marks.  Defendant's argument that the doctrine of foreign equivalents can be applied to demonstrate dissimilarity between two similar marks using

1 the same dominant word runs afoul of Ninth Circuit precedent because it is well-established that
2 marks are compared both in appearance <u>and</u> in meaning.  <u>Brookfield Communications, Inc.</u>, 174
3 F.3d at 1054.  Thus, even if GALLO was intended to refer to a last name and EL GALLO was
4 intended to mean "rooster," the two marks remain highly similar in appearance because the
5 dominant word in both marks are identical.

6         The similarity in spelling between GALLO and EL GALLO shows that the marks are
7 similar and this alone tilts this factor in Plaintiff's favor.

8         **b.     Relatedness and Proximity of the Two Companies' Products or Services**

9         "Related goods are generally more likely than unrelated goods to confuse the public as to
10 the producers of the goods."  <u>Brookfield Communications, Inc.</u>, 174 F.3d at 1055.  "[T]he focus
11 is on whether the consuming public is likely somehow to associate West Coast's products with
12 Brookfield."  <u>Id.</u> at 1056.  "The rights of the owner of a registered trademark extend to any goods
13 related in the minds of consumers.  <u>Id.</u> (internal quotations and citations omitted).  "The
14 proximity of goods is measured by whether the products are: (1) complementary; (2) sold to the
15 same class of purchasers; and (3) similar in use and function."  <u>La Quinta Worldwide, LLC</u>,
16 2014 WL 3844135, at *4 (internal quotations and citations omitted).

17         Defendant argues that GALLO and EL GALLO are unrelated because Plaintiff's GALLO
18 mark is primarily used to market Plaintiff's wine products whereas Defendant's EL GALLO
19 product is a non-alcoholic energy drink.  However, the products need not be exactly identical, as
20 the test is whether a consumer would associate the two.  <u>Entrepreneur Media, Inc. v. Smith</u>, 279
21 F.3d 1135, 1147 (9th Cir. 2002) ("this definition does not necessarily require a close proximity
22 before goods will be found related); <u>Brookfield Communications, Inc.</u>, 175 F.3d at 1056.  In this
23 case, both products are products within the beverage industry.  Therefore, the products may not
24 be complementary and they may not be sold to the same class of purchasers, but the two products
25 have similar use and function.

26         Moreover, it is undisputed that EL GALLO was promoted as a mixer for alcoholic drinks,
27 making the two product lines closer in relationship than, say, wine and some other beverage less
28 associated with alcohol, such as milk.  Other courts have found products to be related despite

10

1   minor differences in the type of goods or services at issue.  See Brookfield Communications,

2   Inc., 174 F.3d at 1056 (company which provided information regarding movies was related to

3   company that rented and sold videotapes).

4       Courts generally view the relatedness factor using a sliding scale approach.  See, e.g.,

5   Entrepreneur Media, Inc., 279 F.3d at 1148 ("We therefore apply a sliding scale approach as to

6   the weight that relatedness will carry...").  Using a sliding scale, the Court finds that Plaintiff's

7   goods and Defendant's goods are related, but the Court also acknowledges that this factor would

8   weigh more heavily in Plaintiff's favor if both parties competed against each other in the

9   narrower alcoholic beverages industry, as opposed to the slightly broader and more general

10  beverages industry.  Nonetheless, this factor weighs in favor of judgment in favor of Plaintiff on

11  its trademark claim.

12      **c.     Strength of Plaintiff's Mark**

13      "The stronger a mark—meaning the more likely it is to be remembered and associated in

14  the public mind with the mark's owner—the greater the protection it is accorded by the

15  trademark laws."  Brookfield Communications, Inc., 174 F.3d at 1058.  "This 'strength' of the

16  trademark is evaluated in terms of its conceptual strength and commercial strength."  GoTo.com,

17  Inc., 202 F.3d at 1207.

18      The undisputed facts show that Plaintiff's GALLO mark is strong.  The jointly submitted

19  facts establish that GALLO products are sold in tens of thousands of stores across the United

20  States, with 1.5 billion bottles of GALLO wines sold in the United States since 1996.  (JUF Nos.

21  5-7.)  Plaintiff has advertised GALLO extensively on television, radio, in print advertising and

22  on the Internet.  (JUF No. 12-14.)  Plaintiff has spent over $6.4 million in 2012 and over $6

23  million in 2013 in advertising.  (Def.'s Resp. No. 89.)

24      Defendant's brief includes a section entitled "The First Factor: Strength of the Mark Does

25  not Favor Gallo."  (Def. Grenade Beverage, LLC.'s Opp'n to Pl. E. & J. Gallo Winery's Mot. for

26  Summ. J. 5:21-6:2.)  However, the arguments presented therein are unrelated to the strength of

27  mark issue.  Defendant argues that Plaintiff does not own the "El Gallo" or "El Gallito" marks,

28  but this fact is irrelevant for purposes of determining the strength of Plaintiff's GALLO mark.

1    Defendant argues that Plaintiff failed to police other entities' use of the "El Gallo" mark, but,

2    even if accepted as true, this fact is also irrelevant for purposes of determining the strength of the

3    GALLO mark.

4         Defendant presents no relevant facts or argument disputing the strength of Plaintiff's

5    GALLO mark.  Accordingly, this factor weighs in favor of Plaintiff.

6         **d.    Marketing Channels Used**

7         "When examining the marketing channels used by the competing companies, we consider

8    where the goods or services are sold, the sales and marketing methods employed, and the class of

9    purchasers exposed to the marketing efforts."  La Quinta Worldwide, LLC, 2014 WL 3844135,

10   at *6 (citing Sleekcraft, 599 F.2d at 353).

11        This factor is difficult to assess as there appears to be little evidence in the record

12   regarding the marketing channels used by Defendant to sell and advertise its EL GALLO

13   product.  Plaintiff relies on excerpts from the deposition of Paul Sandford, but this testimony

14   only states that Defendant intended to market EL GALLO products in convenience stores,

15   supermarkets, liquor stores, restaurants, and bars at some point in time.  (Decl. of Michael J.

16   Salvatore in Supp. of Pl.'s Mot. for Summ. J., Ex. 19, pg. 308:6-25.)  Plaintiff also attempts to

17   rely upon the declaration of Anna Bell for the proposition that wines and energy drinks are sold

18   in the same section in grocery stores and liquor stores.  (Pl. E. & J. Gallo Winery's Statement of

19   Undisputed Facts in Supp. of its Mot. for Summ. J. Nos. 74-75.)  However, it is unclear how Ms.

20   Bell has knowledge of this fact and whether her statement would be admissible as a fact within

21   Ms. Bell's personal knowledge.  Moreover, even if true, the fact that wines and energy drinks are

22   generally sold in the same aisle offers little insight as to whether Plaintiff's GALLO and

23   Defendant's EL GALLO products were sold in the same aisle in the same grocery store at any

24   point in time.

25        There may be some overlap in marketing channels, as it is undisputed that Defendant's

26   EL GALLO product was advertised as a mixer for alcoholic beverages.  (Def.'s Resp. No. 107.)

27   Given that both products are beverages, there is a reasonable inference that their marketing

28   channels will overlap to some degree since beverages are commonly sold in grocery stores and

1  GALLO may be sold in the same grocery store as EL GALLO.  However, at this stage, all

2  ambiguities and reasonable inferences must be drawn in favor of the non-moving party.

3  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).  In the absence of

4  evidence of actual overlap in marketing channels, the Court cannot conclude that this factor

5  weighs in favor of Plaintiff.

6        **e.**    **Degree of Care Likely to be Exercised by Purchasers in Selecting Goods**

7       Courts have held that persons seeking expensive goods and services will exercise more

8  care and will be less easily confused compared to persons seeking inexpensive goods and

9  services.  See Brookfield Communications, Inc., 174 F.3d at 1060; E. & J. Gallo Winery v. Gallo

10 Cattle Co., 967 F.2d 1280, 1293 (9th Cir. 1992); Hokto Kinoko Co. v. Concord Farms, Inc., 810

11 F. Supp. 2d 1013, 1030 (C.D. Cal. 2011); Interstellar Starship Services v. Epix, Inc., 125 F.

12 Supp. 2d 1269, 1277 (D. Ore. 2001).  Moreover, in E. & J. Gallo Winery v. Gallo Cattle Co., 967

13 F.2d 1280, 1293 (9th Cir. 1992), the Ninth Circuit affirmed the trial court's conclusion that

14 "consumers tend to exercise less care when purchasing lower cost items like wine..."

15      Plaintiff introduces evidence that GALLO wines and GALLO vermouth are regularly

16 sold at prices from $5.99 per bottle to $9.99 per bottle.  (Decl. of Michael J. Salvatore in Supp.

17 of Pl.'s Mot. for Summ. J. ¶¶ 3-4.)  Defendant objects to this evidence based upon lack of

18 personal knowledge, inadmissible hearsay and inadmissible opinion testimony.  However, Mr.

19 Salvatore's declaration is based upon his visit to an actual retailer's website which sold GALLO

20 products at the prices stated.  Accordingly, Mr. Salvatore has personal knowledge of the fact that

21 GALLO products can be found at retail at the prices stated and his testimony is therefore

22 admissible.  Defendant offers no other evidence or argument disputing Plaintiff's contention that

23 consumers are likely to exercise less care and would be more easily confused because the goods

24 at issue are relatively inexpensive.  Therefore, this factor weighs in favor of Plaintiff.

25      **f.**    **Defendant's Intent in Selecting Its Mark**

26      "'The law has long been established that if an infringer "adopts his designation with the

27 intent of deriving benefit from the reputation of the trade-mark or trade name, its intent may be

28 sufficient to justify the interference that there are confusing similarities."'"   Brookfield

1  Communications, Inc., 174 F.3d at 1059 (quoting Pacific Telesis v. International Telesis

2  Comms., 994 F.2d 1364, 1369 (9th Cir. 1993)).  "An inference of confusion has similarly been

3  deemed appropriate where a mark is adopted with the intent to deceive the public."  Id.  "This

4  factor favors the plaintiff where the alleged infringer adopted his mark with knowledge, actual or

5  constructive, that it was another's trademark."  Id.

6          In this case, Defendant admitted that it was aware of Plaintiff's GALLO products before

7  Defendant created its EL GALLO product.  (Def.'s Resp. No. 108.)  It is undisputed that

8  Defendant reached out to Plaintiff via Twitter and via telephone in an attempt to co-promote

9  Plaintiff's GALLO product and Defendant's EL GALLO product.  (Def.'s Resp. No. 93.)  It also

10 worth noting that, in support of its opposition to Plaintiff's motion for summary judgment, Mr.

11 Sandford, a "managing member" of Defendant, rather brazenly declared that he intends to

12 resume sales of EL GALLO products since he learned that Plaintiff no longer seeks monetary

13 damages from Defendant.  (Decl. of Paul Sandford ¶ 3, ECF No. 72.6.)  The fact that Plaintiff

14 abandoned its claim for damages against Defendant does not speak to whether Defendant's use

15 of its EL GALLO mark violates the Lanham Act.  Mr. Sandford declaration suggests that he and

16 his company find it acceptable to violate the Lanham Act so long as their conduct does not result

17 in monetary damages, which suggests bad faith.

18         However, Defendant points to evidence rebutting an inference of intent.  Mr. Sandford

19 testified that the name EL GALLO was selected due to the perception in Hispanic culture of

20 roosters being powerful and energetic.[1]  (Decl. of Michael J. Salvatore in Supp. of Pl.'s Mot. for

21 Summ. J., Ex. 19, pg. 101:6-22.)  Accordingly, there is a dispute of fact regarding whether

22 Defendant possessed the intent to infringe upon Plaintiff's mark or whether EL GALLO was

23 selected based upon the perception of roosters.

24         Based upon the foregoing, for purposes of ruling on the pending motions for summary

25 judgment, the Court cannot conclude that this factor weighs in either party's favor.

26

27 [1] The Court notes that there appears to be no admissible evidence that "El Gallo" means rooster in Spanish or any
   admissible evidence regarding the perception of roosters in Spanish culture.  Nonetheless, for purposes of evaluating
   the motions for summary judgment, the evidence is sufficient to establish Defendant's motivation for selecting EL
28 GALLO as the name for its product.

**g.      Evidence of Actual Confusion**

"Evidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely." La Quinta Worldwide, LLC, 2014 WL 3844135, at *6 (quoting Sleekcraft, 599 F.2d at 352).  "However, due to 'the difficulty of garnering such evidence, the failure to prove instances of actual confusion is not dispositive." Id. (quoting Sleekcraft, 599 F.2d at 352).

Plaintiff points to two instances of actual confusion from consumers regarding the GALLO and EL GALLO marks.  Mr. Harline, an employee with Defendant, testified at a deposition that, on two occasions, people mentioned GALLO wines to Mr. Harline in connection with a sale call or activity made regarding Defendant's EL GALLO product.  (Decl. of Michael J. Salvatore in Supp. of Pl.'s Mot. for Summ. J., Ex. 22, pg. 65:14-66:5.)  Regarding the first instance, Mr. Harline testified that he vaguely recalled a conversation with someone from the area where Plaintiff's business was located who associated Plaintiff's GALLO with Defendant's GALLO.  (Id.)  The second instance was in a Quiznos, where a "young gal" asked Mr. Harline whether EL GALLO was related to GALLO.  (Id.)

Defendant objects to Mr. Harline's testimony on hearsay grounds.  However, Plaintiff does not introduce the statements of these unidentified persons to prove the truth of the matter stated therein, Plaintiff seeks to admit Mr. Harline's testimony as evidence that conversations occurred with one of Defendant's representatives where a member of the consuming public inquired as to an association between GALLO and EL GALLO.  Accordingly, this evidence is not hearsay.

Defendant also argues that these conversations are not evidence of actual consumer confusion.  This argument is without merit, as the mere fact that consumers inquired about a possible relationship between GALLO and EL GALLO evidences a certain degree of confusion regarding the two brands.  Accordingly, this factor still weighs in favor of Plaintiff.

Finally, Defendant argues that Plaintiff has submitted no evidence of consumer confusion within this district.  Defendant attempts to revive a venue argument already rejected by the Court in denying Defendant's motion to dismiss.  (See ECF Nos. 25, 27.)  Suffice to say, Defendant

cites no authority for the proposition that Plaintiff must prove consumer confusion specifically within this district and Defendant's arguments regarding venue bear no relevance to the issues raised in the present motions for summary judgment.

### h.   Likelihood of Expansion in Product Lines

"When there is 'a strong possibility that either party may expand his business to compete with the other,' this factor weighs in favor of finding 'that the present use is infringing.'"  La Quinta Worldwide, LLC, 2014 WL 3844135, at *7 (quoting Sleekcraft, 599 F.2d at 354).

The only evidence of expansion presented by Plaintiff is Plaintiff's statement that it has "demonstrated a commitment to diversifying its beverage offerings" and evidence that at least one of Plaintiff's competitors markets both alcoholic and non-alcoholic beverages.  Even if uncontroverted, neither of these facts are convincing with respect to the likelihood of expansion factor.  Plaintiff has not voiced any intent to expand into the energy drink market which Defendant's product occupies.  Accordingly, this factor does not weigh in Plaintiff's favor.

### i.   Overall Balance of the Sleekcraft Factors

Assessing the totality of the facts in the record, the Court finds that Defendant's use of the EL GALLO mark is likely to confuse consumers with respect to Plaintiff's GALLO mark. Five of the Sleekcraft factors weigh in Plaintiff's favor: the conflicting designations are similar on their face, the two product lines are relatively similar as they are both products sold in the beverage industry, Plaintiff's mark is strong, the degree of care exercised by purchasers in selecting the goods at issue is low since they are inexpensive, and there is some anecdotal evidence of actual confusion experienced by Defendant's representative.  Only three factors do not weigh in Plaintiff's favor: the marketing channels used, Defendant's intent, and the likelihood of expansion in product lines.  Notably, the three most important Sleekcraft factors are the similarity of the marks, the relatedness of the goods and services and overlapping marketing channels.  Goto.com, Inc., 202 F.3d at 1205.  Two of these factors weigh in Plaintiff's favor. The third factor is unclear, only because there is little evidence in the record regarding how Defendant markets its EL GALLO product.  Nonetheless, given the strength of Plaintiff's GALLO mark, it is not difficult to imagine confusion caused by a product called EL GALLO

sold within the same beverage industry.  Based upon the foregoing, the Court finds that Plaintiff is entitled to summary judgment on its trademark claims.

        4.      <u>Plaintiff is Entitled to Summary Judgment on All Claims</u>

Plaintiff argues that it is entitled to summary judgment on all its claims because the foregoing analysis with respect to Plaintiff's trademark claims applies to Plaintiff's remaining claims.  In addition to Plaintiff's trademark claim under the Lanham Act, Plaintiff asserted claims for Use of False Designations of Origin and False Representations in Commerce under the Lanham Act, for Unfair Competition under the Lanham Act, and for common law unfair competition and trademark infringement under California law.

The legal standards for claims for false designation of origin or sponsorship under the Lanham Act, 15 U.S.C. § 1125(a)(1), are largely identical to the legal standards for trademark infringement, 15 U.S.C. § 1114.  <u>Brookfield Communications, Inc.</u>, 174 F.3d at 1046 n. 8; <u>General Motors Corp. v. Let's Make A Deal</u>, 223 F. Supp. 2d 1183, 1192-93 (D. Nev. 2002). Plaintiff's second claim for relief for use of false designations of origin and third claim for relief for unfair competition appear to be identical claims, as they are both founded upon Section 43(a) of the Lanham Act, codified as 15 U.S.C. § 1114.  The factual allegations are the same for both claims and the statutory basis for both claims are the same, so there appears to be no basis to treat the second and third claims for relief as separate claims.

The legal standards for common law trademark and unfair competition claims under California law are substantially similar to the standards under the Lanham Act.  <u>Century 21 Real Estate Corp. v. Sandlin</u>, 846 F.2d 1175, 1180 (9th Cir. 1988); <u>Hokto Kinoko Co. v. Concord Farms, Inc.</u>, 810 F. Supp. 2d 1013, 1032 (C.D. Cal. 2011); <u>Kelley Blue Book v. Car-Smarts, Inc.</u>, 802 F. Supp. 278, 288-89 (C.D. Cal. 1992).

In sum, the Court's analysis with respect to Plaintiff's trademark infringement claims is applicable to Plaintiff's remaining claims, and therefore the Court finds that Plaintiff is entitled to summary judgment on all claims.

/ / /

/ / /

**B.      Plaintiff's Request for Injunctive Relief**

The only relief requested by Plaintiff is a permanent injunction prohibiting Defendant from using the EL GALLO and EL GALLITO marks.   Defendant argues in its motion for summary judgment that Plaintiff is not entitled to injunctive relief.   "[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief.   A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).   Further, the Lanham Act expressly states that courts "have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark..." 15 U.S.C. § 1116(a).

1.      El Gallito Mark

As an initial matter, the Court finds that Plaintiff is not entitled to injunctive relief regarding Defendant's use of the EL GALLITO mark.   None of the claims asserted in the complaint challenge the legality of the EL GALLITO mark.[2]   In other words, Plaintiff's

---

[2] El Gallito is mentioned in two paragraphs in the complaint, in addition to the reference in Plaintiff's prayer for relief:

> 16.      Upon information and belief, Defendant Grenade Beverage intends to use the trademark EL GALLITO, for "beverages, namely carbonated and non-carbonated energy or sports drinks."   Said defendant has filed an application for registration of this mark in the United States Patent and Trademark Office, which application has been assigned Serial No. 85/419,031. Gallo filed an opposition proceeding against registration of that mark, which has been assigned Opposition No. 91203928.   Said proceeding is pending before the Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office.
> 17.      Upon information and belief, Defendants intend to use the EL GALLITO trademark, which is confusingly similar to Gallo's GALLO® Marks, and to borrow from the goodwill, reputation and fame of the GALLO® Marks.

(Compl. ¶¶ 16, 17.)  However, Plaintiff never alleged or claimed that the EL GALLITO mark was used in violation of the Lanham Act.  EL GALLITO is not mentioned at all within the four claims for relief, whereas EL GALLO is specifically alleged to constitute an infringement on the GALLO trademark.  (Cf. Compl. ¶ 19 ("Defendants' unauthorized use in commerce of the EL GALLO mark as alleged herein is a use in commerce of a reproduction, copy, and colorable imitation of the federally registered GALLO® Marks...").)

1    complaint does not challenge Defendant's use of the EL GALLITO mark or alleges that

2    Defendant's use of the EL GALLITO mark infringes upon Plaintiff's GALLO mark.

3          The complaint simply did not put the legality of the EL GALLITO mark at issue in this

4    action and Plaintiff attempts to improperly bootstrap injunctive relief with respect to the EL

5    GALLITO mark in a lawsuit that is solely concerned with the legality of the GALLO mark.  "An

6    injunction should be 'tailored to eliminate only the specific harm alleged....'"  Skydive Arizona,

7    Inc. v. Quattrocchi, 673 F.3d 1105, 1116 (9th Cir. 2012) (quoting E. & J. Gallo Winery v. Gallo

8    Cattle Co., 967 F.2d 1280, 1297 (9th Cir. 1992)).   Thus, even if Plaintiff demonstrated

9    irreparable harm and inadequacy of the remedies available at law, Plaintiff would not be entitled

10   to an injunction barring Defendant's use of the EL GALLITO mark.[3]

11         2.    Irreparable Injury

12         Addressing the first factor, Plaintiff argues that irreparable injury can be presumed in

13   trademark law.   However, the Ninth Circuit has held that "actual irreparable harm must be

14   demonstrated to obtain a permanent injunction in a trademark infringement action."  Herb Reed

15   Enterprises, LLC v. Florida Entertainment Management, Inc., 736 F.3d 1239, 1249 (9th Cir.

16   2013) (citing Flexibile Lifeline Sys. v. Precision Lift, Inc., 654 F.3d 989, 998 (9th Cir. 2011);

17   Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1137-38 (9th Cir. 2006)).   In so doing,

18   the Ninth Circuit departed from the previous rule that likelihood of irreparable injury may be

19   presumed in trademark cases.  Id. at 1248-50.

20         Although irreparable injury cannot be presumed in trademark cases, the Court finds that

21   Plaintiff has submitted sufficient evidence supporting a finding of irreparable injury.   Plaintiff

22   relies predominantly upon the declaration of Anna Bell in support of a finding that irreparable

23   injury exists.  Ms. Bell is the director of marketing for Plaintiff.  (Decl. of Anna Bell in Supp. of

24   Pl.'s Mot. for Summ. J. ("Bell Decl.") ¶ 2.)   In her capacity as director of marketing, Ms. Bell

25   works on brand strategy and execution, developing and refining communications with retailers

---

26   [3] Given Defendant's express intent to use the EL GALLITO mark, it is worth noting that the Court's finding does
     not mean that the EL GALLITO mark does not infringe upon Plaintiff's GALLO mark.  The Court's only finds that,
27   since Plaintiff's complaint does not challenge the legality of the EL GALLITO mark in these proceedings, the Court
     will not issue a permanent injunction regarding the EL GALLITO mark.  The Court expresses no opinion regarding
28   the merits of a future claim brought by Plaintiff regarding the EL GALLITO mark.

and consumers, defining the strategy for the design of marketing collateral, overseeing and

analyzing research relating to consumers, and overseeing advertising and promotional programs.

(Bell Decl. ¶ 2.)  Bell also stated:

> Plaintiff does not want to associate its GALLO trademark with energy drinks because it believes that mixing energy drinks with alcoholic beverages promotes irresponsible drinking behavior, which is directly contrary to Gallo's philosophy.  Therefore, if consumers are likely to or actually do believe that Defendant's EL GALLO energy drinks are in some way associated with or condoned by Plaintiff, Gallo as a company would suffer damage to its reputation.  And because there have been some reports that drinking excessive amounts of alcoholic beverages mixed with energy drinks could cause physical harm, the harm to Plaintiff's reputation could be devastating.

(Bell Decl. ¶ 75.)  Bell further stated:

> Further, as explained in this Declaration, Gallo as a company is very proud of its GALLO mark and GALLO products, and therefore exerts an enormous amount of time, energy and money on how these marks are used in the marketplace.  Gallo ensures that licensees of its marks, like those marketing GALLO meat products and cheese, follow certain quality standards.  If Defendant is permitted to use the EL GALLO and EL GALLITO marks for energy drinks, as mixers for tequila or otherwise, Gallo's name and reputation are put at risk.  This harm would be irreparable to Plaintiff.

(Bell Decl. ¶ 76.)

Defendant objects that Bell's statements are premised upon her inadmissible opinion that

mixing energy drinks with alcoholic beverages promotes irresponsible drinking.  This objection

is valid, as Bell has not established her qualification to render such an opinion.  However, Bell,

as director of marketing for Plaintiff, can testify that it is Plaintiff's <u>belief</u> that an association

with energy drinks would be harmful to Plaintiff's reputation because Plaintiff <u>believes</u> that

consumers would perceive such an association as endorsing harmful and irresponsible drinking

behavior.

This distinction is critical.  Courts have recognized that, in trademark cases, the injury

caused by the infringement manifests as the loss of control over a business' reputation, a loss of

trade and loss of goodwill.  <u>See, e.g.</u>, <u>CytoSport, Inc. v. Vital Pharmaceuticals, Inc.</u>, 617 F. Supp.

2d 1051, 1080 (E.D. Cal. 2009).

> Trademarks serve as the identity of their owners and in them resides the reputation and goodwill of their owners.  Thus, if another person infringes the marks, that person borrows the owner's reputation, whose quality no longer lies within the owner's control.  [Citation.]  A trademark owner's loss of the ability to control its mark, thus, creates the potential for damage to its reputation.

Id.; see also Seed Services, Inc. v. Winsor Grain, Inc., 868 F. Supp. 2d 998, 1005 (E.D. Cal. 2012); Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC, 741 F. Supp. 2d 1165, 1182-83 (C.D. Cal. 2010); Maxim Integrated Products, Inc. v. Quintana, 654 F. Supp. 2d 1024, 1035-36 (N.D. Cal. 2009).

While Plaintiff may not have introduced admissible evidence to support the proposition that energy drinks are associated with irresponsible drinking or that an association with energy drinks would be harmful to Plaintiff's reputation, it is enough that Plaintiff has introduced evidence of loss of control over their own business reputation.  Plaintiff's marketing director testified that Plaintiff's brand image does not encompass energy drinks and trademark law affords Plaintiff the right to control its branding and image via the legal right to control the usage of the GALLO mark.  Defendant's actions rob Plaintiff of this control, which is a sufficient showing of irreparable harm.

Defendant argues that Plaintiff cannot show irreparable harm because other companies have used trademarks that include the word "Gallo."  Defendant's argument has no merit.  The fact that Plaintiff permits other entities to use "Gallo" in certain contexts says nothing about whether the harm caused by Defendant's use is irreparable.  Moreover, Defendant argues that Plaintiff's licensing of various marks using the term "Gallo" shows that Plaintiff is not actively policing the mark, when in fact the opposite is true.  Plaintiff's various licensing agreements with other entities shows that it is actively asserting control over other entities' use of these marks.  The fact that Plaintiff permits other entities to use Gallo under licensing agreements does not give Defendant free reign to also use Gallo and does not demonstrate that Defendant's wrongful use is reparable.  Accordingly, this factor weighs in favor of a permanent injunction.

///

///

21

3.      Insufficiency of Remedies at Law

Courts have broadly accepted the general proposition that, even after the Supreme Court's decision in eBay, monetary damages are inadequate to remedy trademark violations.  See HTS, Inc. v. Boley, 954 F. Supp. 2d 927, 960 (D. Ariz. 2013) (injunctive relief is remedy of choice for trademark cases since there is no adequate remedy at law for injury caused by a defendant's continuing infringement) see also Nucal Foods, Inc. v. Kaye, No. 2:12-cv-2754 KJM AC, 2013 WL 1680643, at *6 (E.D. Cal. Apr. 17, 2013); Wecosign, Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1083 (C.D. Cal. 2012).

Defendants' raises several arguments in support of its contention that remedies at law are adequate.  First, Defendant argues that Plaintiff entered into a licensing agreement with another companies involving the use of the word "Gallo" on various products.  However, the fact that Plaintiff was able to negotiate agreements involving the use of the word "Gallo" in other contexts does not demonstrate that the damages in this case are readily calculable or adequate. Second, Defendant argues that Plaintiff voluntarily abandoned its claims for damages.  However, this also does not support the conclusion that monetary damages are readily calculable or adequate.  If anything, the abandonment of the claim for damages suggests that monetary damages are inadequate because they are too difficult to calculate and prove.  Accordingly, this factor weighs in favor of a permanent injunction.

4.      Balance of the Equities and the Public's Interest

Defendant argues that the balance of the equities does not favor Plaintiff because it would somehow be inequitable to allow Plaintiff to obtain equitable relief in the form of an injunction when Plaintiff abandoned its claims for monetary damages.  This argument has no basis in fact, law or logic.  The Court is aware of no authority which suggests that claims for damages are a prerequisite to equitable relief such as an injunction.  Moreover, there are many valid reasons for Plaintiff to abandon a claim for damage, such as difficulty in ascertaining damages in cases such as this, where the extent of damage caused by Defendant's trademark infringement may not yet be great or easily calculated, but Plaintiff wishes to prevent future damage before it occurs.

/ / /

Defendant also argues that various other entities have used the word "Gallo" in marks without Plaintiff taking legal action against them. Defendant cites no authority for the proposition that this fact is relevant in any way, nor is the Court aware of any such authority.

Moreover, the equities favor Plaintiff as Defendant has brazenly admitted that it would continue to market and sell products under the EL GALLO mark simply because Plaintiff has dropped its claim for monetary damages. See discussion, supra, Part III.A.3.f. The fact that Plaintiff does not pursue monetary damages does not render Defendant's conduct legal under trademark law. Moreover, this type of situation is precisely the type of circumstances where injunctive relief would be appropriate, namely a situation where a claim for monetary damages may not be worthwhile because damages would be difficult to prove or the extent of injury to Plaintiff's reputation has not yet grown to the point where a suit for damages is worthwhile. Further, it would be within the public's interest to enjoin Defendant from causing any further confusion regarding Plaintiff's GALLO mark. See CytoSport, Inc., 617 F. Supp. 2d at 1081 ("In the trademark context, courts often the public interest at stake as the right of the public not to be deceived or confused.").

Based upon the foregoing, the Court finds that the balance of equity and public interest factors weigh in favor of a permanent injunction.

5. Plaintiff Has Demonstrated Entitlement to a Permanent Injunction

For the reasons set forth above, all four factors weigh in favor of a permanent injunction enjoining Defendant from marketing or selling products using the EL GALLO mark. Accordingly, the Court recommends that a permanent injunction be issued.

**IV.**

**CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the Court finds that Plaintiff is entitled to summary judgment. The Court finds that a permanent injunction is the appropriate remedy prohibiting Defendant from further using the EL GALLO mark. However, the Court does not enjoin Defendant from using the EL GALLITO mark.

/ / /

Accordingly, it is HEREBY RECOMMENDED that:

1.      Plaintiff's motion for summary judgment be PARTIALLY GRANTED (ECF No. 56);

      a.      That summary judgment be entered in favor of Plaintiff and against Defendant on the issue of liability for Plaintiff's trademark infringement claim under the Lanham Act, Plaintiff's use of false designations of origin and false representations in commerce/unfair competition claim under the Lanham Act, and common law unfair competition/trademark infringement claim under California law;

      b.      That a permanent injunction be issued enjoining Defendant from continuing to use the GALLO mark;

      c.      That Plaintiff's request for a permanent injunction enjoining Defendant from using the EL GALLITO mark be DENIED; and

2.      Defendant's motion for summary judgment be DENIED (ECF No. 65).

These Findings and Recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen (14) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 15, 2014**

_____
UNITED STATES MAGISTRATE JUDGE